IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATTHEW GOLGA,<br><br>   Plaintiff,<br><br> v.<br><br>CITY OF NORTH RIDGEVILLE, TARA PEET, LISA DIEDERICH, and MICHAEL FREEMAN,<br><br>   Defendants. | Case No. _____<br><br>Judge _____<br><br>**Complaint with Jury Demand** |

## I. Introduction

1.  This case is brought pursuant to 42 U.S.C. § 1983 for deprivation of civil rights guaranteed by the First, Fourth, and Fourteen Amendments to the U.S. Constitution and under the laws of the State of Ohio against the City of North Ridgeville and various of its public officials, who used the power of their offices to unlawfully retaliate against Plaintiff Matthew Golga for Golga's speech criticizing Defendants and their policies.

2.  On the afternoon of Tuesday February 9, 2021, Golga was surprised to learn that the City of North Ridgeville had shut off his water service. He called the City's water department to resolve the issue, but the department's officials repeatedly hung up the phone on him. Frustrated by his government's apparent lack of concern for his situation and unwillingness to hear him out, Golga raised his voice and used profanity throughout his numerous calls with the water department; however, Golga never made any threats. Golga's persistence paid off, and he was eventually allowed to speak with the City's safety director, who agreed to turn Golga's water back on in exchange for Golga paying the last $31 that he had to his name and promising to pay the remaining balance when he received his paycheck two days later. Later that day, Golga sent an email to his councilman to complain about how he was treated by water department officials.

3. Unfortunately, what should have been a successful interaction with a citizen-in-need instead metastasized into an egregious civil rights violation when water department officials and the chief of police saw to it that Golga be criminally punished for his rudeness on the phone that day. Tara Peet, the City's new Director of Public Utilities, disagreed with the arrangement to restore Golga's water service and felt that he had been given an undeserved "gift." She felt that Golga's demeanor on the phone was disrespectful, and she was especially upset that Golga had complained to his local councilperson about the incident, so Peet sought to teach Golga a lesson. In retaliation for Golga's protected speech, Peet contacted the City's chief of police and insisted that Golga be prosecuted for telephonic harassment. To that end, she provided a written statement falsely stating that Golga had been verbally abusive to her and her staff. The chief of police, for his part, initiated a complaint for telecommunications harassment against Golga without any evidence, let alone probable cause to believe, that Golga had any specific intent to abuse, intimidate, harass, or threaten anyone.

4. Golga was subsequently criminally prosecuted based on nothing more than his phone calls to the City's water department that day. After a criminal trial, Golga was convicted and forced to spend 3 days in jail—all because Defendants failed to recognize the complete lack of any evidence that Golga intended to abuse, intimidate, harass, or threaten anyone.

5. Fortunately, Ohio's Ninth Circuit Court of Appeals recognized the complete baselessness of the proceedings against Golga and reversed his conviction based on lack of evidence of intent. Judge Carr of the Ninth District also wrote separately to caution that "prosecutions for telecommunications harassment such as the one here could have a chilling effect on the First Amendment rights of citizens to contact government offices in order to redress grievances," and that "[c]ourts should remain mindful that the First Amendment affords protections against laws which abridge the freedom of speech as well as the freedom to petition the government to redress grievances.

6. Because Golga's speech underlying the criminal charges against him was protected by the First Amendment, there could never have been probable cause to support these charges. Because the Defendants, in seeking to impose criminal charges on Golga, were motivated by Golga's protected speech, they violated Golga's civil rights by instituting a retaliatory and malicious prosecution against him and are therefore liable to Golga on the claims asserted herein.

## II. Jurisdiction and Venue

7. This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for the claims raised under 42 U.S.C. § 1983 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims raised under Ohio law.

8. This Court has jurisdiction over Defendants because they are residents or political subdivisions of the State of Ohio.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts upon which the claims in this litigation are based and the damages resulting therefrom occurred in Lorain County, Ohio.

## III. Parties

10. Plaintiff is a resident of the City of North Ridgeville, Lorain County, Ohio.

11. Defendant Tara Peet is and was at all relevant times the Director of Public Utilities for the City of North Ridgeville and is a resident of North Ridgeville. She is sued in her individual capacity.

12. Defendant Lisa Diederich is and was at all relevant times an employee of the City of North Ridgeville in the Ciy's water department and is a resident of North Ridgeville. She is sued in her individual capacity.

13. Defendant Michael Freeman is and was at all relevant times the chief of police for the City of North Ridgeville and is a resident of North Ridgeville. He is sued in his individual capacity.

14. Defendant City of North Ridgeville is a municipal corporation in Lorian County, Ohio.

## IV. Facts

3

15.     On the afternoon of February 9, 2021, Golga went to make a pot of coffee in the kitchen of his North Ridgeville home before picking up his son from school when he discovered that no water would come out of his faucet. As Golga went off to pick up his son, his fiancée discovered that the water had been shut off by the City. Golga was surprised by this, as he had not received any notice that his water would be shut off, and did not receive any such notice until the next day, on February 10.

16.     Golga therefore called the North Ridgeville water department to see about having his service reinstated. Between approximately 3:15 PM and 3:45 PM, Golga telephoned the water department eight times. Initially, he spoke with Defendant water department employee Lisa Diederich and asked how to get his water turned back on and was advised that the only way to do so was to pay the full amount due, which was approximately $185. Golga advised the water department that he had not received any notice of the shut off and would be unable to pay the full amount due until the end of the week.

17.     On this call, Golga objected to the fact that his water service was shut off without notice and insisted that the water department should restore his water service under the circumstances, including the fact that the shutoff occurred in the middle of the COVID-19 pandemic and that he therefore needed water for proper hygiene. Golga even offered to sign a promissory note and said that he would pay his entire balance in full in 3 days when he received his next paycheck.

18.     However, Golga's attempts to negotiate a resolution to his situation fell on deaf ears, and Diederich continued to insist that Golga had to pay his balance in full before his water service could be restored. Feeling that his valid concerns and circumstances were being dismissed, Golga grew increasingly frustrated and angry and used profanity on the call; however, he never made any verbal threats. Unhappy with Golga's tone and use of profanity, Diederich abruptly hung up the phone on Golga.

19. Golga immediately called back, but Diederich simply picked up the phone and immediately hung up on Golga a second time, this time without even answering, which angered Golga further.

20. Golga called a third time, but this time Diederich allowed the call to go to voicemail. Upset that his government officials—the only people that could help him with his water situation—were dismissing his valid concerns and hanging up the phone on him, Golga left a voicemail objecting to how he was being treated. In the voicemail, Golga angrily accused the water department officials of trying to harm him by depriving him of water and objected to being hung up on. He expressed his willingness to come to the water department in person to have a conversation if the department was not willing to resolve the matter on the phone. Although Golga used an angry tone and profanity, he made no threats in his voicemail. Specifically, Golga said in this voicemail:

> Ummm, you can't just be hanging up on people. That is f*cking bullsh*t. If you are trying to f*cking kill me by turning my f*cking water off, then f*ck you. If you would like me to come down to the f*cking thing, we can have a f*cking conversation. Go f*ck yourself. You think you're f*cking bad? Yeah, f*ck him. Let's starve him out. Let's f*cking kill them all, right? F*ck you!

21. After leaving the voicemail, Golga continued to call the water department, and Defendant Peet began fielding Golga's calls. Peet had recently been hired to run the City's water department, and to make her mark, she instituted draconian policies to increase water bill payments by being less forgiving of citizens in arrears. Thus, just like Diederich, Peet made it clear that she would not make any arrangements to restore Golga's water service without payment in full and dismissed any proposed alternative arrangement that Golga made. Throughout these calls, Peet even suggested that Golga simply borrow the money from someone else, which Golga found insulting. As before, Peet repeatedly hung up the phone on Golga because she did not like his tone and use of profanity.

22. On his final call, Golga was eventually allowed to speak with Jeffrey Ambruster, the City's safety director. Mr. Ambruster agreed to turn Golga's water back on in exchange for Golga paying the last $31 that he had to his name and promising to pay the remaining balance when he received his paycheck two days later. Satisfied with this resolution, Golga went to the water department in

person, where he had a normal and peaceful interaction with both Diederich and Peet. Peet even escorted Golga to Mr. Arbruster's office, where Golga made the agreed-upon payment and left the building without incident.

23. Golga's sole motivation for contacting the water department on that day was for the legitimate purpose of getting his water service turned back on and to complain that the City had shut the water off at his home without notice. Golga's phone calls were addressed to the office designated to field such concerns, and there was no other office that Golga should have called to register his complaint.

24. Later that evening, Golga sent an email to his councilman to complaint about how he was treated by the City's officials and feared for his and his family's safety due to lack of running water, which was eventually forwarded to Peet. In this email, Golga stated, in pertinent part:

> I don't know if you've been awake, or looked around, or paid any attention to life in general over the past year, but there's a pandemic that's kinda messed up a lot of sh*t for a lot of people. One thing that's recommended to stay safe is to wash your hands. I can't wash my hands. I can't take a shower. I can't make a pot of coffee. I can't give my kids a glass of water. I DON'T HAVE ACCESS TO WATER. I CAN'T KEEP MY CHILDREN SAFE. MY CHILDREN CAN'T GET CLEAN. I CAN'T CLEAN MY CHILREN'S FACE AND HANDS AFTER THEY EAT. HOW IS THIS POSSIBLE DURING A PANDEMIC WHEN THE NUMBER ONE THING IS TO WASH YOUR HANDS?
>
> * * *
>
> The city hall told me the only way they could get water back to me is by extorting $185 from me. I have (had) $31 dollars to my name. For the week. They took 100% of the rest of my livable cash for the week so I "only" have to stay dirty and unwashed for the night.
>
> * * *
>
> This whole debacle has me f*cked up. I'm seeing that human life means absolutely f*ckin NOTHING to you. * * * BROKE AND WATERLESS. Thanks Utilities. Let me pay you more money to STOP providing the service that you allegedly sent me a letter about that never came.

25. Peet and Diederich felt disrespected by Golga's tone and use of profanity, and Peet in particular felt that her authority was undermined and that Golga had been given a "gift" that was

6

contrary to her department's collection policies. In retaliation, she forwarded Golga's angry voicemail to the City's police chief, Defendant Freeman, and insisted that Golga face some legal consequence for how he spoke to her and Diederich that day. Peet also provided a written statement to Chief Freeman recounting the calls with Golga, where she stated that Golga was "verbally abusive" and that the voicemail Golga left "was exactly what we had experienced with our telephone encounters with Mr. Golga." Peet also took Golga's e-mail complaint (to his councilman) and forwarded it to the Chief of Police.

26. As part of Freeman's investigation, he took statements from both Diederich and Peet, who falsely told him that the voicemail Golga left was representative of all of their other phone calls with Golga. In truth, throughout his numerous phone calls with Diederich and Peet, Golga oscillated between calmly trying to negotiate an alternative resolution to getting his water service turned back on and angrily expressing his frustration and displeasure when he felt that his concerns were being dismissed. While Golga did express anger at times on these calls, he made no threats. He also calmly proposed solutions and tried to explain why his lack of receiving any notice was a factor that should be considered. However, none of this was reported by the Defendants. Instead, by claiming that the voicemail at issue was representative of **all** their communications with Golga, Defendants created a false narrative that failed to account for Golga's legitimate purpose in making his phone calls and his First Amendment right to criticize public officials.

27. Thus, based solely on this false narrative and the content of the voicemail left by Golga, Freeman ignored the First Amendment-protected nature of Golga's speech, and proceeded to charge Golga with "telecommunications harassment" under R.C. 2917.21(A)(1). Even with Diederich and Peet's misleading accounts of their calls with Golga, Freeman did not have probable cause to conclude that Golga had any intent to abuse, intimidate or harass anyone.

28. Nevertheless, Golga was tried and convicted for telecommunications harassment and was forced to spend three days in jail as part of his sentence.

29. Golga appealed his conviction to Ohio's Ninth District Court of Appeals, who recognized the complete baselessness of the proceedings against Golga and reversed his conviction. Per the Court of Appeals, "[a] careful review of the record reveals that it does not contain any evidence that Mr. Golga's calls were made to purposefully abuse, intimidate, or harass the employees." Additionally, Judge Carr of the Ninth District also wrote separately to caution that "prosecutions for telecommunications harassment such as the one here could have a chilling effect on the First Amendment rights of citizens to contact government offices in order to redress grievances," and that "[c]ourts should remain mindful that the First Amendment affords protections against laws which abridge the freedom of speech as well as the freedom to petition the government to redress grievances."

30. Speech that is constitutionally protected cannot possibly form the basis for a finding of probable cause. Additionally, because Golga's conviction was reversed on sufficiency-of-evidence grounds, Defendants' retaliatory decision to prosecute Golga for telephonic harassment lacked probable cause for this independent reason. Thus, for both of these reasons, Defendants, in initiating criminal charges against Golga due to his protected speech violated his rights under the U.S. Constitution.

### V. Causes of Action

### Count 1
### Retaliatory Prosecution
### First Amendment and 42 U.S.C. § 1983

31. Plaintiff incorporates the previous allegations by reference.

32. At all relevant times it was clearly established law in this jurisdiction that Golga has a right under the First Amendment of the U.S. Constitution to be free from government retaliation against him for his speech and for petitioning the government for the redress of grievances.

33. Golga engaged in conduct protected by the First Amendment, including specifically when he called the City of North Ridgeville's water department to complain that his water service had been

8

shut off without notice and when he later complained to a local councilperson about how the water department officials were dismissive of his concerns and situation.

34. Substantially motivated by Golga's First Amendment-protected speech and conduct, Defendants intentionally sought to have Golga prosecuted for a crime. Such adverse action would chill a person of ordinary firmness from engaging in speech that criticizes local government, challenges its policies, and seeks redress of grievances.

35. Probable cause did not exist to support the prosecution of Golga under R.C. 2917.21(A). Additionally, the proceedings against Golga would not have been instituted in the first place were it not for Defendants' false and intentionally misleading statements regarding the content of their phone calls with Golga.

36. By their actions alleged herein, taken under color of law, Defendants deprived Golga of his right to be free from retaliation for exercising his First Amendment rights.

37. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Golga's rights, Golga has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering. Golga is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

### Count 2
### Malicious Prosecution
### Fourth Amendment and 42 U.S.C. § 1983

38. Plaintiff incorporates the previous allegations by reference.

39. With purpose and intent, and acting under color of law, Defendants engineered the baseless and malicious prosecution against Golga knowingly and without probable cause, with the intent to deprive him of his liberty interests secured to him by the Fourth Amendment of the U.S. Constitution. These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with material omissions, indicating that Golga called the

9

water department with the intent to abuse, intimidate or harass its employees and otherwise had no legitimate purpose in making those calls.

40. By their actions alleged herein, taken under color of law, Defendants deprived Golga of his right to be free from malicious and baseless prosecution that is secured to him by the Fourth Amendment and was clearly established as of September 15, 2020. *King v.Harwood*, 852 F.3d 568, 582-583 (6th Cir.2017). All of these actions caused damage to Golga, including restraint of his liberty since he was forced to spend 3 days in jail as a result of the baseless criminal prosecution against him.

41. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Golga's rights, Golga has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering. Golga is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

**Count 3**
**Fabrication/Falsification of Evidence, Due Process**
**Fourteenth Amendment, and 42 U.S.C. § 1983**

42. Plaintiff incorporates the previous allegations by reference.

43. With purpose and intent, and acting under color of law, Defendants fabricated and falsified evidence against Golga knowingly and without probable cause, with the intent to deprive him of his liberty interests secured to him by the Fourth Amendment of the U.S. Constitution. These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with false statements and material omissions, indicating that Golga called the water department with the intent to abuse, intimidate or harass its employees and otherwise had no legitimate purpose in making those calls.

44. By the actions alleged herein, Defendants deprived Golga of his right to due process secured to him by Fourteenth Amendment. All of these actions caused damage to Golga, including restraint to his liberty in being forced to spent 3 days in jail.

45. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Golga's rights, Golga has suffered and will continue to suffer economic and non-economic damages for which these Defendants are liable, including but not limited to, mental, emotional, and physical pain and suffering. Golga is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

### Count 4
### Malicious Prosecution under Ohio Law

46. Plaintiff incorporates the previous allegations by reference.

47. The allegations set forth herein, if proven, establish Gogla's right to recover against Defendants on a claim for malicious prosecution under Ohio law.

48. Defendants maliciously instituted the prosecution of Golga by giving a false or misleading account of the content of their telephone communications with Golga.

49. Probable cause did not exist to support the prosecution of Golga under R.C. 2917.21(A)(1) based on Golga's phone calls with Defendants Diederich and Peet.

50. The criminal prosecution was terminated in Golga's favor.

51. Defendants' malicious conduct, which was intentional, retaliatory, taken in the spirit of ill-will, hatred, and wanton disregard of Golga's rights, caused Plaintiff to suffer substantial economic and non-economic harm, including, without limitation, mental anguish and emotional pain and suffering, attorneys' fees incurred in defending against the wrongful felony indictment, lost income, and other economic losses.

### VI. Prayer for Relief

Wherefore, Plaintiff Matthew Golga respectfully prays for judgment against Defendants in

an amount in excess of $75,000.00 together with punitive damages, attorneys' fees, costs, expenses, and any other relief to which Plaintiff may be entitled or that the Court deems equitable and just.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues within the Complaint.

Respectfully submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
 peter@pattakoslaw.com
Zoran Balac (0100501)
 zbalac@pattakoslaw.com
Gregory Gipson (0089340)
 ggipson@pattakoslaw.com
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, OH 44333
P: 330.836.8533 | F: 330.836.8536

*Attorneys for Plaintiffs*