**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW GOLGA,** | ) | **CASE NO.1:25CV670** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| **CITY OF NORTH RIDGEVILLE,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants**. | ) | |

**CHRISTOPHER A.  BOYKO, J:**

This matter is before the Court on the Motion for Judgment on the Pleadings of

Defendants the City of North Ridgeville, Michael Freeman,Tara Peet and Lisa Diederich.  (ECF#

10).  For the following reasons, the Court grants Defendants' Motion.

In his Complaint, Plaintiff alleges Defendants violated his First Amendment rights when

they engaged in Retaliatory and Malicious Prosecution and Fourteenth Amendment Due Process

rights for fabricating evidence.  Lastly, Plaintiff alleges a claim for Malicious Prosecution under

Ohio law.

Plaintiff's claims stem from phone calls and a voicemail Plaintiff made in 2021 to the

North Ridgeville Water Department when his water was shut off without advance notice.

 Plaintiff complained to Defendant Diederich, a Water Department employee, that his water was

shut off without notice and should be restored.  Golga had a fiancé and children in the home and

this was during the COVID pandemic when hygiene was paramount.  The Water Department informed him he would need to pay the entirety of his $185.00  bill before service would be restored.  Plaintiff responded that he had $31.00 to his name and would pay the full bill in three days when he received  his next paycheck.  The Water Department initially refused to negotiate with Plaintiff.  Over the course of several phone calls in an attempt to resolve the water situation, Plaintiff became increasingly frustrated and his language became more profane, resulting in Diederich hanging up on him and refusing to pick up when Plaintiff called back.  After leaving a crass voicemail, Plaintiff's calls were handled by Defendant Peet, Director of Public Utilities for North Ridgeville, who refused to restore service until Plaintiff paid the full amount.  Eventually, Plaintiff reached Safety Director Armbruster who agreed to restore Plaintiff's water for a $31.00 payment upfront and payment of the remaining amount within three days.  Plaintiff  came to the office, had a normal conversation with Diederich and Peet, met with Armbruster and paid the $31.00.  Plaintiff then emailed his councilperson to complain about the Water Department's treatment of him.  When Peet and Diederich saw the complaint, which was forwarded to Peet, she was upset by Plaintiff's use of profanity  and complained to Defendant Freeman, Chief of Police, that Plaintiff should suffer some consequence for his abusive language with her and Diederich.   Plaintiff was ultimately charged and convicted of telecommunications harassment and had to spend three days in jail as a result.

On appeal, the Ninth District Court of Appeals overturned the verdict, finding no evidence that Golga intended to abuse, intimidate, or harass the employees with his phone calls.  On April 4, 2025, Plaintiff filed this suit with the Northern District of Ohio.

2

**Defendants' Motion for Judgment on the Pleadings**

According to Defendants, Plaintiff's Complaint must be dismissed because Plaintiff's Retaliation claim was brought outside the two year limitation period and is therefore untimely. Plaintiff's remaining claims fail because Plaintiff cannot show the Defendants acted without probable cause, a necessary element to prevail on a malicious prosecution theory under both federal and Ohio law.  Lastly, Plaintiff's Complaint fails to plausibly allege that Defendants Diederich and Peet fabricated any evidence.

## LAW AND ANALYSIS

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almendares v. Palmer,* 284 F.Supp.2d 799, 802 (N.D. Ohio 2003).  Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.' " *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.,* 2007 WL 2446740, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable." *Id.* Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to

judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added). A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

**<u>Retaliatory Prosecution in Violation of the First Amendment</u>**

Plaintiff's Complaint alleges that Defendants unlawfully sought to prosecute Plaintiff in retaliation for the exercise of his First Amendment right to free speech when he complained to the Water Department and his councilperson about his water being shut off.

Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right." *Crawford–El v. Britton,* 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In *Hartman v. Moore,* 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L. Ed. 2d 441 (2006) the Supreme Court held, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Citing *Crawford-El* at 592. See also *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

To establish a claim for retaliatory prosecution, a plaintiff must show that "(1) he engaged in protected conduct; (2) he was subject to "an adverse action" that would deter a person of "ordinary firmness" from engaging in that conduct; (3) the adverse action was "motivated at least in part" by his protected conduct; and (4) the defendants lacked probable cause." *Rasawehr v.*

*Grey,* No. 24-3322, 2025 WL 1639164, at *3 (6th Cir. June 10, 2025) see also *Bickerstaff v. Lucarelli,* 830 F.3d 388, 399 (6th Cir. 2016).

According to Defendants, Plaintiff's Retaliatory Prosecution claim must be dismissed as it was filed outside the relevant statute of limitations.  "The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts."  *Beaver St. Invs., LLC v. Summit Cnty.,* Ohio, 65 F.4th 822, 826 (6th Cir. 2023) *citing Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  In Ohio, "a two-year statute of limitations applies to § 1983 claims ...." *Cooey v. Strickland* 479 F.3d 412, 416 (6th Cir. 2007).  Although the statute of limitations is determined by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace,* 549 U.S. at 388, 127 S.Ct. 1091.

The parties do not dispute the elements of a retaliatory prosecution claim, rather the dispute involves when the accrual date is triggered.  According to Defendants, it is when the prosecution was initiated.  Plaintiff contends it is the date the appellate court overturned the conviction.

In *Rapp v. Putman* , the Sixth Circuit held that the accrual date runs from the initiation of criminal proceedings.  " For plaintiff's  retaliatory prosecution claim 'what would otherwise be the accrual date,' was when defendants initiated the prosecution."  644 F. App'x 621, 625 (6th Cir. 2016) quoting  *Wallace v. Kato,* 549 U.S. 384, 393, 127 S.Ct. 1091 (2007).  "At that point, plaintiff had engaged in protected activity (first element), defendants took an adverse action (second element) by initiating a prosecution of plaintiff purportedly motivated by plaintiff's protected conduct (third element) and without probable cause (fourth element)." *Id* citing

5

*Thaddeus–X v. Blatter,*  175 F.3d 394 (6th Cir. 1999) (en banc).   The Sixth Circuit distinguished a retaliatory-prosecution claim from that of a malicious prosecution claim as discussed in *Heck v. Humphrey*, 512 U.S. 477 (1994) which is the authority that Plaintiff relies upon for an accrual date based upon the overturning of a conviction.   In distinguishing the accrual date in a retaliatory prosecution claim the Sixth Circuit in *Rapp* wrote, "in contrast to the malicious-prosecution claim at issue in *Heck*, a plaintiff need not prove favorable termination of the prosecution in order to establish a retaliatory-prosecution claim." *Rapp* at 625 citing  *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir.2011); and  *Williams v. Davis,* 609 Fed.Appx. 865, 867 (7th Cir.2015) ("Whether a person is convicted of a crime is irrelevant to [a retaliatory prosecution claim.]").  Once a prosecution is initiated, all the elements of a retaliatory prosecution claim are present and the Sixth Circuit held in *Rapp* that at that point the claim is actionable, triggering the accrual date.  Moreover, at that point, plaintiff had no "extant conviction which success in [a] tort action would impugn." *Wallace,* 549 U.S. at 393, 127 S.Ct. 1091.  Therefore, *Heck* does not bar the claim or imprint a later accrual date.  The Sixth Circuit has recently reaffirmed its conclusion in *Rapp*. See *Rasawehr v. Grey,* No. 24-3322, 2025 WL 1639164, at *4 (6th Cir. June 10, 2025)(" A retaliatory prosecution claim accrues when the defendant initiates the prosecution.").

The "standard rule" is that the statute of limitations for § 1983 claims begins to run when a "plaintiff has a complete and present cause of action ...." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)).  A complete cause of action arises "when the plaintiff knows or has reason

to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. Cnty. of Geauga,* 103 F.3d 516, 520 (6th Cir. 1997).

Because Plaintiff was charged with telecommunications harassment on February 11, 2021,  the limitations period accrued on that date and thus the limitations period ran in February 11, 2023.  Plaintiff failed to file his Complaint until April 4, 2025, well outside the limiations period.

Plaintiff argues that the accrual period did not begin to run until his conviction was overturned.  Plaintiff cites to the United States Supreme Court holdings in  *Hartman v. Moore* and *Heck v. Humphrey* wherein the Supreme Court held that a lack of probable cause is a necessary element of a First Amendment Retaliation case and that a lack of probable cause cannot be determined until the underlying prosecution and conviction are fully litigated.  If the Court were to agree with the Sixth Circuit in *Rapp* that accrual begins when the charges are brought, it would place the civil court in the untenable position of having to determine whether there was probable cause even before the criminal action were fully litigated.  This is exactly the scenario the Supreme Court in *Heck* and *Harmon* proscribed.

The Supreme Court in *Wallace* discussed its decision in *Heck*.  "In *Heck*, a state prisoner filed suit under § 1983 raising claims which, if true, would have established the invalidity of his outstanding conviction.  We analogized his suit to one for malicious prosecution, an element of which is the favorable termination of criminal proceedings." *Wallace v. Kato,* 549 U.S. 384, 392, 127 S. Ct. 1091, 1097, 166 L. Ed. 2d 973 (2007).  Clearly, the Supreme Court analyzed the posture of *Heck* to be more akin to a malicious prosecution claim that requires as an element of such a claim a favorable decision in the criminal proceeding.  In a retaliatory prosecution claim

no such element exists.   Also the Sixth Circuit in *Rapp* expressly distinguished *Heck*, finding its holding inapplicable to a retaliatory prosecution claim which does not require an underlying favorable conclusion of a criminal conviction.  And, federal courts presiding over a civil action for retaliatory prosecution may always stay the civil matter to allow the criminal action to conclude and thus negate any concerns over the civil action rendering a decision of probable cause that would affect the criminal matter.

In conclusion, the Court finds the Sixth Circuit has directly spoken on when the cause of action accrues for a retaliatory prosecution claim and that is when the criminal action is initiated. As a result, the Court grants Defendants' Motion to Dismiss Plaintiff's Retaliatory Prosecution claim at Count One because the claim was filed well outside the two year limitation period which ran from February 11, 2021.  Because this suit was not filed until April 4, 2025, it must be dismissed as untimely.

**§ 1983 Malicious Prosecution**

According to Plantiff's Malicious Prosecution allegations, Defendants engineered a baseless and malicious prosecution of Plaintiff without probable cause.   They conspired to fabricate a false claim based on material omissions with the intent of making it look like Plaintiff called the Water Department with the intent of abusing, intimidating and harassing the employees.

Defendants argue that Plaintiff fails to plausibly allege lack of probable cause which is fatal to his claims at Counts One, Two and Four because each lack probable cause as an element of the claim.  Because Plaintiff was convicted by a jury on the charge of telephone harassment, Defendants contend this establishes probable cause as a matter of law.

Under federal law, a plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).  "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Id* at 306 (6th Cir. 2010) quoting *United States v. McClain,* 444 F.3d 556, 562 (6th Cir.2005).  A court must consider the "totality of the circumstances and whether the "facts and circumstances" which the defendants had "knowledge at the moment of the arrest were "sufficient to warrant a prudent person ... in believing ... that" the seized individual "ha[d] committed ... an offense."  *Sykes,* 625 F.3d at 306.

Construing the allegations in the Complaint as true, as we must on a Motion for Judgment on the Pleadings, Plaintiff makes the following allegations directed to the falseness of the Defendants' allegations against Plaintiff that led to his conviction.

> "...Peet contacted the City's chief of police and insisted that Golga be prosecuted for telephonic harassment. To that end, she provided a written statement falsely stating that Golga had been verbally abusive to her and her staff." (Complaint at ¶ 3).

> As part of Freeman's investigation, he took statements from both Diederich and Peet, who falsely told him that the voicemail Golga left was representative of all of their other phone calls with Golga.  In truth, throughout his numerous phone calls with Diederich and Peet, Golga oscillated between calmly trying to negotiate an alternative resolution to getting his water service turned back on and angrily expressing his frustration and displeasure when he felt that his concerns were being dismissed. While Golga did express anger at times on these calls, he made no threats. He also calmly proposed solutions and tried to explain

why his lack of receiving any notice was a factor that should be considered. However, none of this was reported by the Defendants. Instead, by claiming that the voicemail at issue was representative of all their communications with Golga, Defendants created a false narrative that failed to account for Golga's legitimate purpose in making his phone calls and his First Amendment right to criticize public officials. (*Id*. ¶ 26).

"Additionally, the proceedings against Golga would not have been instituted in the first place were it not for Defendants' false and intentionally misleading statements regarding the content of their phone calls with Golga." (*Id*. ¶ 35).

These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with material omissions, indicating that Golga called the water department with the intent to abuse, intimidate or harass its employees and otherwise had no legitimate purpose in making those calls. (*Id.* ¶ 39).

These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with false statements and material omissions, indicating that Golga called the water department with the intent to abuse, intimidate or harass its employees and otherwise had no legitimate purpose in making those calls. (*Id.* ¶ 43)

Defendants maliciously instituted the prosecution of Golga by giving a false or misleading account of the content of their telephone communications with Golga. (*Id*. ¶ 48).

The Court holds that Defendants are entitled to dismissal of Plaintiff's Malicious Prosecution claim under federal law.  First, there are no facts asserted in the Complaint that point to anything specific that Freeman did outside of taking the statements of Diederich and Peet that would support any claim against Freeman for malicious prosecution.  The only facts plead by Plaintiff of fabrication or providing false information goes to Diederich and Peet allegedly failing to disclose that Plaintiff's calls were not all as profane as the voicemail.  According to the decision by the Ninth District in *State of Ohio v. Golga,* 239 N.E.2d 1165 ((9ᵗʰ Dist. Ohio April 15, 2025) it was only after the voicemail message was forwarded to the police that Plaintiff was

10

charged with one count of telecommunications harassment in violation of Revised Code Section

2917.21(A)(1).  The statute reads in pertinent part:

> (A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
> (1) Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient;
>
> A violation of division (A)(1), (2), (3), (5), (6), (7), (8), (9), (10), or (11) or (B) of this section is a misdemeanor of the first degree on a first offense and a felony of the fifth degree on each subsequent offense.

Ohio Rev. Code Ann. § 2917.21 (West)(2)'

There is no dispute of fact that Plaintiff left the following voicemail message with the

Water Department after repeated calls to restore his water service:

> Ummm, you can't just be hanging up on people. That is f*cking bullsh*t. If you are trying to f*cking kill me by turning my f*cking water off, then f*ck you. If you would like me to come down to the f*cking thing, we can have a f*cking conversation. Go f*ck yourself. You think you're f*cking bad? Yeah, f*ck him. Let's starve him out. Let's f*cking kill them all, right? F*ck you!

The Sixth Circuit has held that "a plaintiff's conviction of the underlying offense, even if

subsequently reversed, constitutes conclusive proof that probable cause existed for the

prosecution, unless the conviction was obtained by fraud, perjury or other corrupt means." *Dunn*

*v. State of Tenn. By & Through Roberts,* 798 F.2d 469 (6th Cir. 1986).  Because there is no

allegation in the Complaint that the voicemail was fraudulent or fabricated, and the voicemail is

what triggered the prosecution, probable cause existed to charge Plaintiff.

11

Additionally, at trial, both Diederich and Peet apparently testified as indicated by the Ninth Circuit. According to the Ninth Circuit, they testified that Plaintiff called the Water Department to get his service turned back on. They testified his call started out polite but devolved into anger when he could not get the water turned back on. He further accused them of wanting to kill him and his child by depriving them of water. They testified they could not remember exactly what he said during the phone calls but did say it was similar to what he said in his voicemail. (*Id.* at ¶8). Importantly, there is no indication in the Ninth Circuit's decision that there was any fabrication of evidence.

Ultimately, the decision to reverse the trial court jury verdict was based on the Ninth Circuit's holding that the evidence did not support a finding that Plaintiff intended to harass, intimidate or abuse the Water Department personnel. The Court found that the prosecution failed to produce evidence that Plaintiff intended to abuse, intimidate or harass Defendants as required by the statute as opposed to whether Defendants felt they had been abused, intimidated or harassed. They did note though that "It is understandable that the employees felt harassed, intimidated and abused by Mr. Golga's profanity-laced tirades and they were justified in hanging up on his repeated calls." (Id at ¶ 7). Moreover, one Judge dissented, holding that she believed the evidence supported the conviction.

Plaintiff argues that the conviction was overturned for lack of evidence and therefore, the prosecution lacked probable cause. However, the burden of proof for probable cause to prosecute is substantially less than the reasonable doubt standard to obtain a conviction.

While Plaintiff alleges the fabrication went to the nature of the initial calls, the evidence at trial does not contradict Plaintiff's assertion that his initial calls were not profane. Instead, the

Ninth Circuit described Defendants testimony as acknowledging Plaintiff's initial call was polite. According to the above representation of the witness testimony, Defendants testified Plaintiff was initially polite but became angrier the further the conversations went without resolution.

Here, the statute only requires that a single communication that violates the statute be made for a violation to occur. And, according to the Ninth District, the charge was made after the police received the voicemail, which is not alleged to be fabricated or falsified. That communication was a sufficient basis for prosecution, therefore, the Court finds Defendants are entitled to dismissal of Plaintiff's Malicious Prosecution under § 1983 because he has not sufficiently alleged a lack of probable cause.

The Court is cognizant of the fact that typically probable cause determinations are factual determinations. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Ouza v. City of Dearborn Heights,* 969 F.3d 265, 279 (6th Cir. 2020) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000)). Moreover, "probable cause, of course, is not supported by fabricated evidence." *Clark v. Abdallah,* 131 F.4th 432, 453 (6th Cir. 2025). However, the Court may consider the Ninth District decision in *Golga* without converting Defendants' Motion for Judgment on the Pleadings to a motion for summary judgment. "[F]ederal courts may also consider materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) motion to a Rule 56 motion. (Internal citation omitted). The same is true with respect to Rule 12(c) motions for judgment on the pleadings." *Whittiker v. Deutsche Bank Nat. Tr. Co.,* 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009) citing *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir.2008). Because the Ninth District decision reversing Plaintiff's conviction fails to

support Plaintiff's assertion that the prosecution lacked probable cause because it was based on false or fabricated evidence, the Court grants Defendants' Motion on the Plaintiff's § 1983 claim for Malicious Prosecution.

**Malicious Prosecution under Ohio law**

For the same reasons as those stated by the Court in granting dismissal for Defendants on Plaintiff's § 1983 Malicious Prosecution claim, the Court grants Defendants' Motion on Plaintiff's Malicious Prosecution claim under Ohio law.

"The elements required to prove malicious prosecution under Ohio law are: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'" *Brooks v. City of Cleveland,* 795 F. Supp. 3d 987, 1013 (N.D. Ohio 2025); *Froelich v. Ohio Dept. of Mental Health,* 2007-Ohio-4161, 114 Ohio St.3d 286, 871 N.E.2d 1159, at ¶ 10. Ohio courts define probable cause for the purposes of a malicious prosecution claim as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged." *Rogers v. Barbera,* 170 Ohio St. 241, 164 N.E.2d 162, 166 (Ohio 1960) (quoting *Ash v. Marlow,* 20 Ohio 119 (1851)). Similar to federal law Ohio courts have held that:

> a finding of guilty of a criminal offense by a court having jurisdiction to try and dispose of the case, even though later and finally reversed by a reviewing court, raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution brought by the defendant in the criminal case against the instigator thereof.

*Vesey v. Connally*, 112 Ohio App. 225, 175 N.E.2d 876, 878 (Oh. Ct. App. 1960) see also *Tilberry v. McIntyre,* 135 Ohio App.3d 229, 733 N.E.2d 636, 641 (Oh. Ct. App. 1999).

"Nevertheless, fraud or unlawful means in securing a conviction which is subsequently reversed on appeal may be shown for the purpose of negativing the existence of probable cause as shown by the conviction." *Vesey,* 175 N.E.2d at 878.

> In general, [then,] throughout the United States, where the complaint on its face shows that [the] plaintiff in an action for malicious prosecution was, in the prosecution complained of, convicted in a lower court, although such conviction was subsequently dismissed by a court of superior jurisdiction, the action will be defeated unless plaintiff alleges and proves further facts tending to impeach the validity of the judgment of conviction and the presumption of probable cause arising therefrom, such as the fact that the conviction was brought about by fraudulent or perjured testimony or through undue or unfair means employed by defendant in the malicious prosecution action, a mere allegation of lack of probable cause being insufficient.

*Id.* at 878–79.  See also *Harris v. Bornhorst,* 513 F.3d 503, 520–21 (6th Cir. 2008).

Because the analysis of lack of probable cause under an Ohio Malicious Prosecution claim mirrors that of federal law, for the reasons stated above, the Court dismisses Plaintiff's Malicious Prosecution claim under Ohio law because he has failed to allege a plausible claim sufficient to overcome the presumption of probable cause in his underlying prosecution.

**Fabrication of Evidence**

According to Count Three of his Complaint, Plaintiff alleges Defendants violated his Due Process Rights under the Fourteenth Amendment by depriving him of his liberty interest when they fabricated evidence in order to secure his conviction for telephone harassment.

The Sixth Circuit has recognized fabrication-of-evidence claims under the Fourth and Fourteenth Amendments.  *Clark v. Abdallah,* 131 F.4th 432, 447 (6th Cir. 2025) citing *Hoskins v. York,* No. 23-5325, 2024 WL 2894648, at *2 (6th Cir. June 10, 2024).  "Because Fourth Amendment claims turn crucially on the lack of probable cause, a law-enforcement defendant may defeat liability by showing that, notwithstanding the fabricated evidence, probable cause

15

supported detention." Clark, 131 F.4th at 447.  Thus, insofar as Plaintiff has alleged a fabrication of evidence claim under the Fourth Amendment, the Court's prior holding that probable cause existed for the prosecution defeats such a motion.

However, Plaintiff's Complaint does state a Fourteenth Amendment claim for fabrication of evidence.  "The elements of a fabrication-of-evidence claim under the Due Process Clause are (1) the evidence was knowingly fabricated, and (2) the evidence likely affected the decision of the jury." Clark v. Abdallah, 131 F.4th 432, 448 (6th Cir. 2025).  Such a claim is not dependent on asserting a lack of probable cause.  However, Defendants contend the Complaint fails to plausibly allege that fabricated evidence likely affected the jury's decision to convict because Plaintiff's alleged fabrication claims were irrelevant to the prosecution and conviction in question.

As the Ninth District decision makes clear, the prosecution and conviction were based on the witnesses representation that Golga's calls were initiated to get his water service turned back on.  He began politely but then became more agitated when they would or could not help him. (Golga, 239 N.E. 3d 1165 *8).  "He then began repeatedly swearing at them and accused them of trying to kill him and his children by depriving them of water." (Id.).  It then cited to his voicemail and its contents, which are undisputed.

This recitation mirrors those alleged by Plaintiff himself in his Complaint.  "Frustrated by his government's apparent lack of concern for his situation and unwillingness to hear him out, Golga raised his voice and used profanity throughout his numerous calls with the water department..." (Complaint ¶ 2).  It does not appear in the Ninth Circuit decision that any employee testified that Plaintiff threatened them.  Instead, even the Ninth Circuit wrote it was

16

understandable that the employees felt harassed, intimidated and abused by Mr. Golga's profanity-laced tirades..." (*Golga*, *7).

In short, the Court agrees with Defendants that Plaintiff's alleged fabrications or omissions were irrelevant to the prosecution and conviction for the reasons stated above. Consequently, the Court grants Defendants' Motion for Judgment on the Pleadings on Plaintiff's Fabrication of Evidence claim.

Therefore, for the foregoing reasons, the Court grants Defendants Motion for Judgment on the Pleadings on all Plaintiff's claims.

IT IS SO ORDERED.


Dated: March 9, 2026                    s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge

17